IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUI GLOBAL PRODUCTS, LTD. | § | |
| D/B/A GWEE | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 4:20-cv-2624 |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| SAMSUNG TELECOMMUNICATIONS | § | |
| AMERICA, LLC, AND SAMSUNG | § | |
| ELECTRONICS AMERICA, INC. | § | |
| | § | |
|    Defendants. | § | Jury Trial Requested |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff GUI Global Products, Ltd. d/b/a Gwee ("Gwee" or "Plaintiff") hereby submits this Complaint for patent infringement against Defendants Samsung Electronics Co., Ltd., Samsung Telecommunications America, LLC, and Samsung Electronics America, Inc. (collectively "Samsung" or "Defendants"), and states as follows:

## INTRODUCTION

1.     This is a patent infringement case in which Gwee seeks compensation for Samsung's infringement of Gwee's U.S. Patent Nos. 10,589,320; 10,562,077; 10,259,021 and 10,259,020 (collectively the "patents-in-suit").

2.     Gwee and the Gwee® line of touchscreen, earbuds, optical microfiber cleaning products, exercise devices, and medical products are at least primarily the brainchild of inventor Walter G. Mayfield of Houston, Texas. Mr. Mayfield is the manager of GUI Global Management, LLC, which is the Managing General Partner of GUI Global Products, Ltd.

3.     After many weekends spent in his garage and kitchen developing prototypes, Mr. Mayfield decided that a business could be created from some of his innovative products. He then explored the commercialization of a new line of cleaning and switching products for touch screen devices and earbuds including with a magnetic cord manager that offered convenience, portability and performance. With the addition of entrepreneur and former business owner, Dan Valdez, Gwee was founded.  Mr. Valdez served as President of Gwee and is a co-inventor on the patents-in-suit. Since its founding, Gwee has developed an even more robust portfolio of innovative products including an exercise device through its subsidiary GweeGym, LLC and a patented liquid indicating medical bandage through its subsidiary Dry See, Inc. Brand names of some of Gwee's products, including through its subsidiaries, include Sport Guppy™, Gwee Button™, Gwee Keyring™, Gwee Leaf™, Gwee Racer™, Gwee Racercase™, Gwee Budz™, Gwee Button Dock™, Gwee Gym™, and Dry See®.

4.     Mr. Mayfield and Mr. Valdez combined their inventive efforts to create and refine a portfolio of Gwee products, continued to build the company, and began to implement the go-to market strategy. With the hard work of Mr. Mayfield, Mr. Valdez and others, Gwee affirmed its place in the market.

5.     Mr. Mayfield and Mr. Valdez are not only entrepreneurs and successful businessmen, they are also successful inventors.  Mr. Mayfield is a named inventor on fifteen United States patents, including ten patents in which Mr. Valdez and Mr. Mayfield are co-inventors.  These ten patents include the four patents-in-suit.

6.     The Samsung products that infringe the patents-in-suit are the various iterations of Galaxy Buds and Galaxy Buds Plus products (hereinafter collectively referred to as "Galaxy Buds" or the "Samsung Infringing Products.").

## THE PATENTS-IN-SUIT

7.     Gwee is the owner of all right, title and interest in the patents-in-suit, including the right to sue for past, present and future infringement thereof and to collect damages for any such past, present or future infringement.  The inventions disclosed and claimed in the patents-in-suit provide numerous benefits over any prior existing systems comprising magnetic portable switching devices.

8.     The matters described and claimed by U.S. Patent No. 10,589,320 generally include systems comprising a portable switching device selectively and magnetically coupled to a portable electronic device; wherein the electronic device comprises a circuit responsive to the switching device; the electronic device comprises at least one of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, and raised shapes, which are  configured to correspond to complementary surface elements on the switching device; wherein the portable switching device is configured to activate, deactivate, or send into hibernation the portable electronic device; wherein the electronic device plays or pauses a remote device; wherein the switching device includes a lid and hinge; wherein the lid is recessed to configure to the electronic device; and wherein the case of the switching device, including its hinged lid, protects the electronic device. A more specific description of the matters claimed by this patent is detailed below.

9.     The matters described and claimed by U.S. Patent No. 10,562,077 generally include systems comprising a portable switching device selectively and magnetically coupled to a portable electronic device; wherein the electronic device comprises a circuit responsive to the switching device; the electronic device comprises at least of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps and raised shapes, which are configured to correspond to

3

complementary surface elements on the switching device; wherein the portable switching device is configured to activate, deactivate, or send into hibernation the portable electronic device; wherein the electronic device plays, pauses and/or controls the volume of a remote device; wherein the switching device includes a lid and hinge; wherein the lid is recessed to configure to the electronic device; and wherein the case of the switching device, including its hinged lid, protects the electronic device. A more specific description of the matters claimed by this patent is detailed below.

10.     The matters described and claimed by U.S. Patent No. 10,259,021 generally include systems comprising a portable switching device magnetically and selectively coupled to a portable electronic device; wherein the electronic device comprises an electronic circuit that is responsive to the switching device; the electronic device comprises at least one of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, and raised shapes, which are configured to correspond to complementary surface elements on the switching device; wherein the portable switching device is configured to activate, deactivate or send into hibernation the portable electronic device; and wherein the case of the switching device functions protects the electronic device. A more specific description of the matters claimed by this patent is detailed below.

11.     The matters described and claimed by U.S. Patent No. 10,259,020 generally include systems comprising a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force from a first magnet disposed within the switching device; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; the electronic device comprises at least one of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps and raised shapes

which are configured to correspond to complementary surface elements on the switching device; the portable switching device is configured to activate, deactivate or send into hibernation the portable electronic device; and wherein the case of the electronic device protects the switching device.  A more specific description of the matters claimed by this patent is detailed below.

## THE PARTIES

12.     Gwee is a Texas limited partnership having its place of business at 1819 St. James Place in Houston, Texas.

13.     Samsung Electronics Co., Ltd. (referred to individually herein as "SEC") is a Korean corporation with its principal offices at 416 Maetan-3dong, Yeongtong-gu, Suwon-City, Gyeonggi-do, 443-742, South Korea. On information and belief, SEC designs, manufactures, and provides to the U.S. and world markets a wide range of products, including Galaxy Buds.

14.     Samsung Telecommunications America, LLC (referred to individually herein as "STA") is a Delaware limited liability company with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082, with a registered agent at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

15.     Samsung Electronics America, Inc. (referred to individually herein as "SEA") is a New York corporation, having its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660, and with a registered agent at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. SEA is a wholly owned subsidiary of SEC.  On information and belief, effective January 1, 2015, SEA merged with STA.

16.     Hereinafter, SEC, STA and SEA are collectively referred to as "Samsung."

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101 et seq.

18.     This Court has personal jurisdiction over Samsung, including because it has committed acts within this State giving rise to this action and which have established minimum contacts with this forum such that the exercise of jurisdiction over Samsung, including to the fullest extent of the Texas Long Arm Statute, would not offend traditional notions of fair play and substantial justice.  Without limitation, Gwee's claims of infringement, including as set forth herein, arise in part out of Samsung's infringing uses, sales and offers for sale of the Samsung Infringing Products occurring in the State of Texas.  Further, Samsung places infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of Texas, including in this District. The acts by Samsung cause injury to Gwee within this District. Further, upon information and belief, Samsung derives substantial revenue from the sale of infringing products within this District, expects its actions to have consequences within this District, and derives substantial revenue from interstate and international commerce. Further, Samsung has significant facilities and operations within the State of Texas.

19.     Venue is proper in this District, including because Samsung has a regular and established place of business in Houston, Texas, namely its Samsung Experience Store in the Houston Galleria, including where the Samsung Infringing Products are at least sold and offered for sale.  Samsung's acts of direct infringement include making, using, selling, offering for sale and importing the Samsung Infringing Products, with at least some of such use and sales efforts

by Samsung occurring in Houston.  Further, SEC is a foreign corporation for which venue is proper at least under 28 U.S.C. § 1391(c)(3).

## COUNT I – INFRINGMENT OF U.S. PATENT NO. 10,589,320

20.     The application for U.S. Patent No. 10,589,320 (the "'320 patent") was filed on November 27, 2019 .  The patent issued on March 17, 2020.  The '320 patent claims priority to non-provisional and provisional filings dated as far back as August 5, 2011.

21.     Claim 1 of the '320 patent covers a system comprising "a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; a first magnet is fully disposed within the electronic device; the electronic device comprises at least one element selected from the group consisting of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, raised shapes, and combinations thereof; configured to correspond to complementary surface elements on the switching device; wherein the second case is decoupled from the first case by overcoming magnetic force the portable switching device is configured to activate, deactivate, or send into hibernation the portable electronic device; the electronic device plays or pauses a remote device; the switching device includes a lid and hinge attaching the lid to the switching device; the lid is recessed to configure to the electronic device; and when coupled, the first case functions to protect the second case."

22.     The Samsung Infringing Products comprise a portable switching device coupled to a portable electronic device, for example, a Galaxy Buds charging case functions as a portable switching device and Galaxy Buds earbuds are portable electronic devices.  Said cases and earbuds

are coupled to each other, including at least magnetically. For example, when Galaxy Buds earbuds are placed into the Galaxy Buds charging case, they securely snap into place magnetically. Further, if a Galaxy Buds charging case is opened and turned upside down, the Galaxy Buds earbuds are held into place magnetically and will not fall from the case. For example:



23.    On information and belief, such coupling comprises the magnets generally marked by the beads depicted below:



24.    The Samsung Infringing Products comprise the switching device (here the charging case) and the electronic device (here the earbud(s)) being configured to selectively couple to each other through a magnetic force, as noted in the above images.

25.    The Samsung Infringing Products comprise both the switching device and the electronic device each comprising a plastic outer case, for example in white, yellow, silver, or black, including as noted with the black outer case above.

8

26.    The Samsung Infringing Products comprise the electronic device comprising an electronic circuit that is responsive to the switching device.  For example, when the Galaxy Buds charging case is opened/closed and the earbuds are located inside the case, the Bluetooth communications capability of the earbuds is activated/deactivated, including as noted below:



(lid of case closed)                    (lid of case has been opened)

27.    The electronic device of the Samsung Infringing Products comprises a first magnet that is fully disposed within the electronic device, for example as marked by beads below:



28.    The electronic device of the Samsung Infringing Products comprises at least one element selected from the group consisting of beveled edges, ridges, bumps, raised shapes, and combinations thereof, for example:



29.     The electronic device of the Samsung Infringing Products is configured to correspond to complementary surface elements on the switching device.  For example, the Galaxy Buds charging case and Galaxy Buds earbuds are configured to fit together when the earbuds are placed into the case.  For example:



30.     With the Samsung Infringing Products, the second case  of the Galaxy Buds earbud is decoupled from the first case of the Galaxy Buds charging case by overcoming the magnetic force of the complementary magnets located within the case.  Such magnets are already noted above.

31.     The switching device of the Samsung Infringing Products is configured to activate, deactivate or send into hibernation the portable electronic device.  For example, when the Galaxy Buds charging case is closed and an earbud is located within the case, it deactivates and/or hibernates the Galaxy Buds earbud, including by sending a signal that causes the earbud to cease

or stop Bluetooth communication; and when the Galaxy Buds charging case is opened, it activates the Galaxy Buds earbud, including by sending a signal that causes its Bluetooth communications to commence.

32.    The electronic device of the Samsung Infringing Products plays or pauses a remote device, for example the electronic device of the Samsung Infringing Product pause a music player on a Bluetooth connected cellular phone (*e.g*., a Samsung phone), for example, via actions such as removing the earbuds from the ears to pause and/or tapping an earbud that has been inserted into the ear to play or pause.  Additionally, when the charging case is opened and the Bluetooth is connected to a phone that is playing music, the music will pause.  The music with then start to play for an earbud when magnetically decoupled from the charging case.

33.    The switching device of the Samsung Infringing Products include a lid and hinge (noted below with a vertical arrow) attaching the lid to the base of the switching device wherein the lid is recessed to correspond to the electronic device (noted below with a horizontal arrow). For example:



34.    The switching device of the Samsung Infringing Products comprises the first case functioning to protect the second case.  For example:



35.     Claim 2 of the '320 patent covers the system of Claim 1 wherein the switching device has a first lens. The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the switching device has a lens on the exterior of the charging case for the charging case battery indicator light and a lens within the interior of the charging case for the earbud battery indicator light. For example, on information and belief, the Galaxy Buds case has lenses for its LED lights which indicate charge status:



36.     Claim 3 of the '320 patent covers the system of Claim 1 wherein the electronic device has a second lens.  For example, the Samsung Infringing Products comprise the system of claim 1 (see above) and, on information and belief, each Galaxy Buds earbud includes at least one infrared sensor and at least one vertical-cavity surface-emitting laser, with each comprising a lens. For example:



37.    Claim 4 of the '320 patent covers the system of Claim 1 wherein the lid has a second magnet disposed within it.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the lid of the switching device has a plurality of magnets disposed within it.  For example (as noted by the below beads):



38.    Claim 5 of the '320 patent covers the system of Claim 4 wherein the lid is configured to employ the second magnet to secure the lid in a closed position by magnetically coupling to the first case.  The Samsung Infringing Products comprise the system of claim 4 (see above), wherein the lid of the switching device is configured to employ the second magnet to secure the lid in a closed position via magnetic coupling, with such coupling being shown as follows.  For example:



39.     Claim 7 of the '320 patent covers the system of Claim 3 wherein the first case is configured to be nonabrasive to the second lens. The Samsung Infringing Products comprise the system of claim 3 (see above), wherein a plastic surface of the Galaxy Buds case is structurally configured with complementary fitting beveled edges and recesses to the earbuds, and its lens and is composed of a material that is nonabrasive to the second lens.

40.     Claim 9 of the '320 patent covers the system of Claim 1 wherein the first magnet is employed in actuating the electronic circuit.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the first magnet is employed in actuating the electronic circuit, including, on information and belief, wherein the magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting leads of the earbud with the conducting leads of the charging case, thus, actuating the circuit responsive to the switching device. When said circuit is actuated, electrical communications occur, comprising activation of the earbud communications capability and communication of earbud battery status, including as indicated by the earbuds entering into a connected status with a phone, by LED display on the charging case, and/or by the battery status transmitted to the phone.   An exemplary such magnet is noted below on the earbud (complementary magnets are also noted on the charging case):



41.     Claim 10 of the '320 patent covers the system of Claim 4 wherein the second or a third magnet is employed in the lid to actuate the electronic circuit.  The Samsung Infringing Products comprise the system of claim 4 (see above), wherein the second magnet within the lid of the Galaxy Buds charging case is employed to actuate the electronic circuit.  On information and belief, this occurs in connection with the Hall effect sensor, which senses a magnetic field associated with or modified by the second magnet.

42.     Claim 11 of the '320 patent covers the system of Claim 1 wherein the electronic device is wireless earplugs.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the electronic device is wireless earbuds (*see* wireless earbuds noted above).

43.     Claim 12 of the '320 patent covers the system of Claim 1 wherein the system further comprises a sensor that can be activated using a magnet.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein, on information and belief,  a sensor, for example a Hall effect sensor in the charging case, battery level sensor, vertical-cavity surface-emitting laser sensor, infrared sensor and/or the Bluetooth sensor (*i.e*., receiver) each can be activated using a magnet.  Bluetooth sensors, infrared sensors and VCSEL sensors in the earbuds are activated when the charging case is opened, which, on information and belief, also involves the functionality of the Hall effect sensor.  Further, a battery level sensor is activated when an earbud is in electrical contact with the charging case.  Without limitation, a magnet disposed within

each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting lead of the earbud with the conducting lead of the charging case, thus actuating a battery level sensor.

44.    Claim 13 of the '320 patent covers the system of Claim 5 wherein the system further comprises a sensor that can be activated using a magnet. The Samsung Infringing Products comprise the system of claim 5 (see above), wherein, on information and belief, a sensor, for example a Hall effect sensor in the charging case, a battery level sensor, a vertical-cavity surface-emitting laser sensor, an infrared sensor and/or a Bluetooth sensor each can be activated using a magnet when the earbuds are located inside the charging case. Bluetooth sensors, infrared sensors and VCSEL sensors in the earbuds are activated when the charging case is opened, which, on information and belief, also involves the functionality of the Hall effect sensor. Further, a battery level sensor is activated when an earbud is in electrical contact with the charging case. Without limitation, a magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting lead of the earbud with the conducting lead of the charging case, thus actuating a battery level sensor.

45.    Samsung has infringed, and continues to infringe, the claims of the '320 patent, including at least those noted above, including by making, using, offering for sale, selling and/or importing the Samsung Infringing Products in violation of 35 U.S.C. § 271(a).

46.    Samsung has also infringed, and continues to infringe, the claims of the '320 patent, including at least those noted above, by actively inducing others to use, offer for resale, and resell the Samsung Infringing Products. Samsung's customers who use those devices in accordance with Samsung's instructions directly infringe said claims in violation of 35 U.S.C. § 271(a). Samsung

intentionally instructs its customers to infringe, including by and through its product sales, instructions, manuals and guides.

47.    Samsung has had at least constructive notice of the '320 patent since at least its issuance.  Samsung will have been on actual notice of the '320 patent since, at the latest, the service of this complaint. By the time of trial, Samsung will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of the above-noted claims of the '320 patent.

48.    Gwee believes and contends that, at minimum, Samsung's knowing and intentional post-suit continuance of its unjustified, clear, and inexcusable infringement of the '320 patent since receiving notice of its infringement of the '320 patent, is necessarily willful, wanton, malicious, in bad-faith, deliberate, consciously and wrongful, and it constitutes egregious conduct worthy of a finding of willful infringement. Accordingly, since at least receiving notice of this suit, Samsung has willfully infringed the '320 patent.

49.    The acts of infringement by Samsung have caused damage to Gwee, and Gwee is entitled to recover from Samsung the damages sustained by Gwee as a result of Samsung's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty. The infringement of Gwee's exclusive rights under the '320 Patent by Samsung has damaged and will continue to damage Gwee, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

**COUNT II - INFRINGMENT OF U.S. PATENT NO. 10,562,077**

50.    The application for U.S. Patent No. 10,562,077 (the "'077 patent") was filed on July 2, 2019 .  The patent issued on February 18, 2020.  The '077 patent claims priority to non-provisional and provisional filings dated as far back as August 5, 2011.

17

51.     Claim 1 of the '077 patent covers a system comprising "a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; a first magnet is fully disposed within the electronic device; the electronic device comprises at least one element selected from the group consisting of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, raised shapes, and combinations thereof; configured to correspond to complementary surface elements on the switching device; the portable switching device is configured to activate, deactivate, or send into hibernation the portable electronic device; the electronic device plays, pauses and/or changes the volume of a remote device; the switching device includes a lid and hinge attaching the lid to the switching device; the lid is recessed to configure to the electronic device; and when coupled, the first case functions to protect the second case."

52.     The Samsung Infringing Products comprise a portable switching device coupled to a portable electronic device, for example, the Galaxy Buds charging case functions as a portable switching device and the Galaxy Buds earbuds are portable electronic devices.  Said cases and earbuds are coupled to each other, including at least magnetically.  For example, when Galaxy Buds earbuds are placed into the Galaxy Buds charging case, they securely snap into place magnetically.  Further, if a Galaxy Buds charging case is opened and turned upside down, the Galaxy Buds earbuds are held into place magnetically and will not fall from the case.  For example:



53.    On information and belief, such coupling comprises the magnets generally marked by the beads depicted below:



54.    The Samsung Infringing Products comprise the switching device (here the charging case) and the electronic device (here the earbud(s)) being configured to selectively couple to each other through a magnetic force, as noted in the above images.

55.    The Samsung Infringing Products comprise both the switching device and the electronic device each comprising a plastic outer case, for example in white, yellow, silver, or black, including as noted with the black cases above.

56.    The Samsung Infringing Products comprise the electronic device comprising an electronic circuit that is responsive to the switching device.  For example, when the Galaxy Buds charging case is opened/closed and the earbuds are located within the charging case, the Bluetooth communications capabilities of the earbuds is activated/deactivated when the earbuds are within the case, including as noted below:



(lid of case closed)          (lid of case has been opened)

57.    The electronic device of the Samsung Infringing Products comprises a first magnet that is fully disposed within the electronic device.  For example (as marked by the beads below):



58.    The electronic device of the Samsung Infringing Products comprises at least one element selected from the group consisting of beveled edges, ridges, bumps, raised shapes, and combinations thereof.  For example:



59.    The electronic device of the Samsung Infringing Products is configured to correspond to complementary surface elements on the switching device.  For example, the Galaxy Buds charging case and Galaxy Buds earbuds are configured to fit together when the earbuds are placed into the case.  For example:



60.    The switching device of the Samsung Infringing Products is configured to activate, deactivate or send into hibernation the portable electronic device.  For example, when the Galaxy Buds charging case is closed and an earbud is located within the case, it deactivates and/or hibernates the Galaxy Buds earbud, including by sending a signal that causes the earbud to cease or stop Bluetooth communication; and when the Galaxy Buds charging case is opened, it activates the Galaxy Buds earbud, including by sending a signal that causes its Bluetooth communications to commence.

61.    The electronic device of the Samsung Infringing Products plays, pauses and/or changes the volume of a remote device, for example the electronic device of the Samsung Infringing Product may play, pause and/or change the volume of a music player on a Bluetooth connected cellular phone (*e.g*., an  Samsung Phone), for example, via actions such as removing the earbuds from the ears to pause and/or tapping an earbud that has been inserted into the ear to play or pause.

62.    The switching device of the Samsung Infringing Products includes a lid and hinge (noted below with a vertical arrow) attaching the lid to base of the switching device wherein the lid is recessed to correspond to the electronic device (noted below with a horizontal arrow).  For example:



63.    The switching device of the Samsung Infringing Products comprises the first case functioning to protect the second case. For example:



64.    Claim 2 of the '077 patent covers the system of Claim 1 wherein the switching device has a first lens. The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the switching device has a lens on the exterior of the charging case for the charging case battery indicator light and a lens within the interior of the charging case for the earbud battery indicator light. For example, on information and belief, the Galaxy Buds case has lenses for its LED lights which indicate charge status:

 

65.     Claim 3 of the '077 patent covers the system of Claim 1 wherein the electronic device has a second lens.  For example, the Samsung Infringing Products comprise the system of claim 1 (see above) and, on information and belief, each Galaxy Buds earbud includes at least one infrared sensor and at least one vertical-cavity surface-emitting laser, with each comprising a lens. For example:



66.     Claim 4 of the '077 patent covers the system of Claim 1 wherein the lid has a second magnet disposed within it.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the lid of the switching device has a plurality of magnets disposed within it. For example (as noted by the below beads):



67.     Claim 5 of the '077 patent covers the system of Claim 4 wherein the lid is configured to employ the second magnet to secure the lid in a closed position.  The Samsung Infringing Products comprise the system of claim 4 (see above), wherein the lid of the switching device is configured to employ the second magnet to secure the lid in a closed position.  For example:



68.     Claim 7 of the '077 patent covers the system of Claim 3 wherein the first case is configured to be nonabrasive to the second lens. The Samsung Infringing Products comprise the system of claim 3 (see above), wherein a plastic surface of the Galaxy Buds case is structurally configured with complementary fitting beveled edges and recesses to the earbuds, and its lens and is composed of a material that is nonabrasive to the second lens.

69.     Claim 9 of the '077 patent covers the system of Claim 1 wherein system of Claim 1 wherein the first magnet is employed in actuating the electronic circuit.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the first magnet is employed in

24

actuating the electronic circuit, including, on information and belief, wherein the magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting leads of the earbud with the conducting leads of the charging case, thus, actuating the circuit responsive to the switching device. When said circuit is actuated, electrical communications occur, comprising activation of the earbud communications capability and communication of earbud battery status, including as indicated by the earbuds entering into a connected status with a phone, by LED display on the charging case, and/or by the battery status transmitted to the phone.    An exemplary such magnet is noted below on the earbud (complementary magnets are also noted on the charging case):



70.    Claim 10 of the '077 patent covers the system of Claim 4 wherein the second or a third magnet is employed in the lid to actuate the electronic circuit.  The Samsung Infringing Products comprise the system of claim 4 (see above), wherein the second magnet within the lid of the Galaxy Buds charging case is employed to actuate the electronic circuit.  On information and belief, this occurs in connection with the Hall effect sensor, which senses a magnetic field associated with or modified by the second magnet.

71.    Claim 11 of the '077 patent covers the system of Claim 1 wherein the electronic device is wireless earplugs.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the electronic device is wireless earbuds (*see* wireless earbuds noted above).

72.     Claim 12 of the '077 patent covers the system of Claim 1 wherein the system further comprises a sensor that can be activated using a magnet.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein, on information and belief, a sensor, for example a Hall effect sensor in the charging case, battery level sensor, vertical-cavity surface-emitting laser sensor, infrared sensor and/or the Bluetooth sensor  (*i.e.*, receiver) each can be activated using a magnet.  Bluetooth sensors, infrared sensors and VCSEL sensors in the earbuds are activated when the case is opened and the earbuds are located within the charging case, which, on information and belief, also involves the functionality of the Hall effect sensor.  Further, a battery level sensor is activated when an earbud is in electrical contact with the charging case.  Without limitation, a magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages an electrical contact of the conducting lead of the earbud with the conducting lead of the charging case, thus actuating a battery level sensor.

73.     Claim 13 of the '077 patent covers the system of Claim 5 wherein the system further comprises a sensor that can be activated using a magnet.  The Samsung Infringing Products comprise the system of claim 5 (see above), wherein, on information and belief, a sensor, for example a Hall effect sensor in the charging case, a battery level sensor, a vertical-cavity surface-emitting laser sensor, an infrared sensor and/or a Bluetooth sensor each can be activated using a magnet.  Bluetooth sensors, infrared sensors and VCSEL sensors in the earbuds are activated when the case is opened and the earbuds are located within the charging case, which, on information and belief, also involves the functionality of the Hall effect sensor.  Further, a battery level sensor is activated when an earbud is in electrical contact with the charging case.  Without limitation, a magnet disposed within each earbud is used to magnetically couple the earbud to the charging

case, which engages electrical contact of the conducting lead of the earbud with the conducting lead of the charging case, thus actuating a battery level sensor.

74.     Samsung has infringed, and continues to infringe, the claims of the '077 patent, including at least those noted above, including by making, using, offering for sale, selling and/or importing the Samsung Infringing Products in violation of 35 U.S.C. § 271(a).

75.     Samsung has also infringed, and continues to infringe, the claims of the '077 patent, including at least those noted above, by actively inducing others to use, offer for resale, and resell the Samsung Infringing Products. Samsung's customers who use those devices in accordance with Samsung's instructions directly infringe said claims in violation of 35 U.S.C. § 271(a). Samsung intentionally instructs its customers to infringe, including by and through its product sales, instructions, manuals and guides.

76.     Samsung has had at least constructive notice of the '077 patent since at least its issuance.  Samsung will have been on actual notice of the '077 patent since, at the latest, the service of this complaint. By the time of trial, Samsung will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of the above-noted claims of the '077 patent.

77.     Gwee believes and contends that, at minimum, Samsung's knowing and intentional post-suit continuance of its unjustified, clear, and inexcusable infringement of the '077 patent since receiving notice of its infringement of the '077 patent, is necessarily willful, wanton, malicious, in bad-faith, deliberate, conscious and wrongful, and it constitutes egregious conduct worthy of a finding of willful infringement. Accordingly, since at least receiving notice of this suit, Samsung has willfully infringed the '077 patent.

78.     The acts of infringement by Samsung have caused damage to Gwee, and Gwee is entitled to recover from Samsung the damages sustained by Gwee as a result of Samsung's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty. The infringement of Gwee's exclusive rights under the '077 Patent by Samsung has damaged and will continue to damage Gwee, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 10,259,021

79.     The application for U.S. Patent No. 10,259,021 (the "'021 patent") was filed on December 22, 2017 and the patent issued on April 19, 2019.  The '021 patent claims priority to non-provisional and provisional filings dated as far back as August 5, 2011.

80.     Claim 1 of the '021 patent covers a system comprising "a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; a first magnet is fully disposed within the electronic device; the electronic device comprises at least one element selected from the group consisting of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, raised shapes, and combinations thereof; configured to correspond to complementary surface elements on the switching device; the portable switching device is configured to activate, deactivate or send into hibernation the portable electronic device; and when coupled, the first case functions to protect the second case."

81.     The Samsung Infringing Products infringe claim 1 of the '021 patent. For example:

82.    The Samsung Infringing Products comprise a portable switching device coupled to a portable electronic device, for example, a Galaxy Buds charging case functions as a portable switching device and a Galaxy Buds earbud is a portable electronic device, and they are magnetically coupled together.  For example, when Galaxy Buds earbuds are placed into the Galaxy Buds charging case, they securely snap into place magnetically.  Further, if a Galaxy Buds charging case is opened and turned upside down, the Galaxy Buds earbuds are held into place magnetically and will not fall from the case.  For example:



83.    On information and belief, such coupling comprises at least the magnets generally marked by the beads below:



84.    The Samsung Infringing Products comprise the switching device (here the charging case) and the electronic device (here the earbud(s)) being configured to selectively couple to each other employing magnetic force from a magnet disposed at least within the electronic device.  An exemplary such magnet is noted above on the earbud.

85.    The Samsung Infringing Products comprise the switching device and the electronic device each comprising a plastic outer case, for example in white, yellow, silver, or black, including as noted with the black outer cases above

86.    The Samsung Infringing Products comprise the electronic device further comprising an electronic circuit that is responsive to the switching device.  For example, when the Galaxy Buds charging case is opened/closed when the earbuds are within the case, the Bluetooth communication capability of the earbuds is activated/deactivated when the earbuds are within the case, including as noted below:



(lid of case closed)          (lid of case has been opened)

87.    The electronic device of the Samsung Infringing Products comprises a first magnet that is fully disposed within the electronic device.  For example, the beads below mark magnets so disposed within the electronic device:



88.    The electronic device of the Samsung Infringing Products comprises at least one element selected from the group consisting of beveled edges, ridges, bumps, raised shapes, and combinations thereof.  For example:

30



89.     The electronic device of the Samsung Infringing Products is configured to correspond to complementary surface elements on the switching device.  For example, the Galaxy Buds charging case and the Galaxy Buds earbuds are configured to fit together when the earbuds are placed into their case.  For example:



90.     The switching device of the Samsung Infringing Products is configured to activate, deactivate or send into hibernation the portable electronic device.  For example, when the Galaxy Buds charging case is closed and an earbud is located within the case, it deactivates and/or hibernates the Galaxy Buds earbud, including by sending a signal that causes the earbud to cease or stop Bluetooth communication; and when the Galaxy Buds charging case is opened, it activates the Galaxy Buds earbud, including by sending a signal that causes its Bluetooth communications to commence.

91.     When the Galaxy Buds earbud are magnetically coupled to the Galaxy Buds charging case, and the Galaxy Buds charging case is closed, the first plastic charging case of the

Galaxy Buds completely contains and functions to protect the second plastic case of the Galaxy Buds earbuds.  For example:



92.     Claim 2 of the '021 patent covers the system of claim 1 wherein the electronic device has a lens.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the electronic device has a lens.  For example, on information and belief, each Galaxy Buds earbud includes at least one infrared sensor and at least one vertical-cavity surface-emitting laser, with each comprising a lens.  For example:



93.     Claim 4 of the '021 patent covers the system of claim 1 wherein the switching device has a lens. The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the switching device has a lens. For example, on information and belief, the Galaxy Buds charging case has lens for its LED lights which indicate charge status:





94.    Claim 6 of the '021 patent covers the system of claim 1 wherein the switching device includes a lid and hinge attaching the lid to the switching device wherein the lid is recessed to correspond to the electronic device.  The Samsung Infringing Products comprise the system of claim 1 (see above) wherein the switching device includes a lid and hinge (noted below with a vertical arrow) attaching the lid to the base of  the switching device wherein the lid is recessed to correspond to the electronic device (noted below with a horizontal arrow).  For example:



95.     Claim 7 of the '021 patent covers the system of claim 6 wherein the lid is recessed to configure to the electronic device.  The Samsung Infringing Products comprise the system of claim 6 (see above), wherein the lid of the switching device is recessed to configure to the electronic device.  For example:



96.     Claim 8 of the '021 patent covers the system of claim 6 wherein the lid has a second magnet disposed within it.  The Samsung Infringing Products comprise the system of claim 6 (see above), wherein the lid of the switching device has a plurality of magnets disposed within it. For example (as noted by the below beads):



97.     Claim 9 of the '021 patent covers the system of claim 8 wherein the lid is configured to employ the second magnet to secure the lid in a closed position.  The Samsung Infringing Products comprise the system of claim 8 (see above), wherein the lid of the switching device is configured to employ the second magnet to secure the lid in a closed position.  For example:



98.     Claim 10 of the '021 patent covers the system of claim 1 wherein the electronic device is wireless earplugs.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the electronic device is wireless earbuds (see wireless earbuds noted above).

99.     Claim 12 of the '021 patent covers the system of claim 2 wherein a surface of the first case is composed of a material nonabrasive to the lens. The Samsung Infringing Products comprise the system of claim 2 (see above), wherein the plastic surface of the Galaxy Buds charging case is composed of a material nonabrasive to the lenses of the Galaxy Buds earbuds.

100.    Claim 14 of the '021 patent covers the system of claim 4 wherein a surface of the first case is composed of a material nonabrasive to the lens. The Samsung Infringing Products comprise the system of claim 4 (see above), wherein the plastic surface of the Galaxy Buds charging case is composed of a material nonabrasive to the lenses of the Galaxy Buds earbuds.

101.    Claim 16 of the '021 patent covers the system of claim 1 wherein the first magnet is employed in actuating the electronic circuit.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the first magnet is employed in actuating the electronic circuit, including, on information and belief, wherein the magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting leads of the earbud with the conducting leads of the charging case, thus, actuating the circuit responsive to the switching device. When said circuit is actuated, electrical communications occur, comprising activation of the earbud communications capability and communication of earbud battery status, including as indicated by the earbuds entering into a connected status with a phone, by LED display on the charging case, and/or by the battery status transmitted to the phone.   An exemplary such magnet is noted below on the earbud (complementary magnets are also noted on the charging case):



102.    Claim 17 of the '021 patent covers the system of claim 8 wherein the second or a third magnet is employed in the lid to actuate the electronic circuit.  The Samsung Infringing

36

Products comprise the system of claim 8 (see above), wherein the second magnet within the lid of the Galaxy Buds charging case is employed to actuate the electronic circuit. On information and belief, this occurs in connection with the Hall effect sensor, which senses a magnetic field associated with or modified by the second magnet.

103.    Claim 19 of the '021 patent covers the system of claim 1 wherein the switching device can be employed to perform at least one function selected from the group consisting of: control volume, pause, play, next slide, switch on, switch off, and combinations thereof; to an electronic device. The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the Galaxy Buds charging case can be employed to perform at least one function selected from the group consisting of: switch on, switch off, and combinations thereof; with the Galaxy Buds earbuds while the earbuds are within the charging case. For example when the earbuds are selectively coupled to the switching device and the lid of the switching device is opened, the Bluetooth transmitter for the earbuds is switched on. When the earbuds are selectively coupled to the switching device and the lid of the switching device is closed, Bluetooth communications from the earbuds are switched off.

104.    Samsung has infringed, and continues to infringe, the claims of the '021 patent, including at least those noted above, including by making, using, offering for sale, selling and/or importing the Samsung Infringing Products in violation of 35 U.S.C. § 271(a).

105.    Samsung has infringed, and continues to infringe, the claims of the '021 patent, including at least those noted above, including by actively inducing others to use, offer for resale, and resell the Samsung Infringing Products. Samsung's customers who use those devices in accordance with Samsung's instructions directly infringe said claims in violation of 35 U.S.C. §

271(a). Samsung intentionally instructs its customers to infringe, including by and through its product sales, instructions, manuals and guides.

106.    Samsung has had at least constructive notice of the '021 patent since at least its issuance. Samsung will have been on actual notice of the '021 patent since, at the latest, the service of this complaint. By the time of trial, Samsung will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of the above-noted claims of the '021 patent.

107.    Gwee believes and contends that, at minimum, Samsung's knowing and intentional post-suit continuance of its unjustified, clear, and inexcusable infringement of the '021 patent since receiving notice of its infringement of the '021 patent, is necessarily willful, wanton, malicious, in bad-faith, deliberate, conscious and wrongful, and it constitutes egregious conduct worthy of a finding of willful infringement. Accordingly, since at least receiving notice of this suit, Samsung has willfully infringed the '021 patent.

108.    The acts of infringement by Samsung have caused damage to Gwee, and Gwee is entitled to recover from Samsung the damages sustained by Gwee as a result of Samsung's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty. The infringement of Gwee's exclusive rights under the '021 patent by Defendants has damaged and will continue to damage Gwee, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

### COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,259,020

109.    The application for U.S. Patent No. 10,259,020 (the "'020 patent") was filed on December 22, 2017 and the patent issued on April 16, 2019. The '021 patent claims priority to non-provisional and provisional filings dated as far back as August 5, 2011.

110.    Claim 1 of the '020 patent covers "A system comprising: a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force from a first magnet disposed within the switching device; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; the electronic device comprises at least one element selected from the group consisting of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, raised shapes, and combinations thereof; configured to correspond to complementary surface elements on the switching device; the portable switching device is configured to activate, deactivate or send into hibernation the portable electronic device; and when coupled, the second case functions to protect the first case."

111.    The Samsung Infringing Products infringe claim 1 of the '020 patent. For example:

112.    The Samsung Infringing Products are systems comprising a portable switching device coupled to a portable electronic device, for example, a Galaxy Buds earbud functions as a portable switching device, a Galaxy Buds charging case is a portable electronic device, and they are magnetically coupled together.  For example, when Galaxy Buds earbuds are placed into the Galaxy Buds charging case, they securely snap into place magnetically.  Further, if a Galaxy Buds charging case is opened and turned upside down, the Galaxy Buds earbuds are held into place magnetically and will not fall from the charging case.  For example:



113.    On information and belief, such coupling comprises at least the magnets generally marked by beads below:



114.    The Samsung Infringing Products comprise the switching device (here the earbud(s)) (here the original charging case and/or wireless charging case) and the electronic device being configured to selectively couple to each other employing magnetic force from a first magnet disposed within the switching device.   An exemplary such magnet is noted with beads on the earbud:



115.    The Samsung Infringing Products comprise both the switching device and the electronic device each comprising a plastic outer case, for example in white, yellow, silver, or black, including as noted with the black outer case above.

116.    The Samsung Infringing Products comprise the electronic device comprising an electronic circuit that is responsive to the switching device.   For example, when a Galaxy Buds earbud is coupled to its charging case, the charging case activates, and it determines the battery

level of the Galaxy Buds earbuds, and the charging case also shows charge status via its LED lights and by the battery status transmitted to the phone.

117.    The Samsung Infringing Products comprise the electronic device comprising at least one element selected from the group consisting of recessed areas, indented shapes, and combinations thereof. For example:



118.    The Samsung Infringing Products comprise the electronic device being configured to correspond to complementary surface elements on the switching device. For example, the Galaxy Buds charging case and Galaxy Buds earbuds are configured to fit together when the earbuds are placed into the case. For example:



119.    Samsung Infringing Products comprise the portable switching device being configured to activate the portable electronic device.  For example, when a Galaxy Buds earbud is coupled to its charging case, the case activates, including to charge the earbud and/or measure/display charge status.

120.    When the Galaxy Buds earbuds are magnetically coupled to the Galaxy Buds charging case and the case is closed, the second plastic case of the Galaxy Buds charging case completely contains and functions to protect the first plastic case of the Galaxy Buds earbuds.  For example:



121.    Claim 2 of the '020 patent covers the system of claim 1 wherein the electronic device has a lens.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the electronic device has a lens.  For example, on information and belief, the Galaxy Buds charging case has lenses for its LED lights which indicate charge status:



122.    Claim 4 of the '020 patent covers the system of claim 1 wherein the switching device has a lens. The Samsung Infringing Products comprise the system of claim 1 (see above),

wherein the switching device has a lens. For example, on information and belief, the Galaxy Buds earbud has at least one infrared sensor, with each such sensor comprising a lens. For example:



123.    Claim 6 of the '020 patent covers the system of claim 1 wherein the electronic device includes a lid and hinge attaching the lid to the electronic device. The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the electronic device includes a lid and hinge attaching the lid to the base of the electronic device. For example:



124.    Claim 7 of the '020 patent covers the system of claim 6 wherein the lid is recessed to configure to the switching device. The Samsung Infringing Products comprise the system of claim 6 (see above), wherein the lid of the electronic device is recessed (marked with an arrow below) to configure to the switching device. For example:



125.     Claim 8 of the '020 patent covers the system of claim 6 wherein the lid has a second magnet disposed within it.  The Samsung Infringing Products comprise the system of claim 6 (see above), wherein the lid of the electronic device has a plurality of magnets disposed within it. For example (as marked by the beads below):



126.     Claim 9 of the '020 patent covers the system of claim 8 wherein the lid is configured to employ the second magnet to secure the lid in a closed position.  The Samsung Infringing Products comprise the system of claim 8 (see above), wherein the lid of the electronic device is configured to employ the second magnet to secure the lid in a closed position.  For example:



127.    Claim 10 of the '020 patent covers the system of claim 1 wherein the switching device is wireless earplugs.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the switching device is wireless earbuds.

128.    Claim 16 of the '020 patent covers the system of claim 1 wherein the first magnet is employed in actuating the electronic circuit.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the first magnet is employed in actuating the electronic circuit, including, on information and belief, wherein the magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting leads of the earbud with the conducting leads of the charging case, thus, actuating the circuit responsive to the switching device. When said circuit is actuated, electrical communications occur, comprising activation of the earbud communications capability and communication of earbud battery status, including as indicated by the earbuds entering into a connected status with a phone, by LED display on the charging case, and/or by the battery status transmitted to the phone.  An exemplary of such magnet is noted below on the earbud (complementary magnets are also noted on the charging case):



129.    Claim 17 of the '020 patent covers the system of claim 8 wherein the second or a third magnet is employed in the lid to actuate the electronic circuit.  The Samsung Infringing Products comprise the system of claim 8 (see above), wherein the second or a third magnet is employed in the lid in actuating the electronic circuit, information and belief, in connection with the Hall effect sensor, which senses a magnetic field associated with or modified by the second magnet.

130.    Claim 18 of the '020 patent covers the system of claim 1 wherein the switching device additionally comprises a laser.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the switching device additionally comprises a vertical-cavity surface-emitting laser.

131.    Claim 19 of the '020 patent covers the system of claim 1 wherein the switching device can be employed to perform at least one function selected from the group consisting of: control volume, pause, play, next slide, switch on, switch off, and combinations thereof; to an electronic device.  The Samsung Infringing Products comprise the system of claim 1 (see above), wherein the switching device can be employed to perform at least one function selected from the group consisting of control volume, play and pause, to an electronic device, for example, via actions such as removing the earbuds from the ears to pause and/or tapping an earbud that has been inserted into the ear to play or pause.

132.    Samsung has infringed, and continues to infringe, the claims of the '020 patent, including at least those noted above, including by making, using, offering for sale, selling and/or importing the Samsung Infringing Products in violation of 35 U.S.C. § 271(a).

133.    Samsung has infringed, and continues to infringe, the claims of the '020 patent, including at least those noted above, including by actively inducing others to use, offer for resale, and resell the Samsung Infringing Products. Samsung's customers who use those devices in accordance with Samsung's instructions infringe said claims in violation of 35 U.S.C. § 271(a). Samsung intentionally instructs its customers to infringe, including by and through its product sales, instructions, manuals and guides.

134.    Samsung has had at least constructive notice of the '020 patent since at least its issuance.  Samsung will have been on actual notice of the '020 patent since, at the latest, the service of this complaint. By the time of trial, Samsung will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of the above-noted claims of the '020 patent.

135.    Gwee believes and contends that, at minimum, Samsung's knowing and intentional post-suit continuance of its unjustified, clear, and inexcusable infringement of the '020 patent since receiving notice of its infringement of the '020 patent, is necessarily willful, wanton, malicious, in bad-faith, deliberate, conscious and wrongful, and it constitutes egregious conduct worthy of a finding of willful infringement. Accordingly, since at least receiving notice of this suit, Samsung has willfully infringed the '020 patent.

136.    The acts of infringement by Samsung have caused damage to Gwee, and Gwee is entitled to recover from Samsung the damages sustained by Gwee as a result of Samsung's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty. The

infringement of Gwee's exclusive rights under the '020 Patent by Defendants has damaged and will continue to damage Gwee, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

**JURY DEMAND**

137.    Gwee demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

138.    Gwee requests entry of judgment in its favor and against Defendants as follows:

a.    A declaration that Defendants have infringed and is infringing the patents-in-suit;

b.    A declaration that Defendants' post-notice infringement of the patents-in-suit has been willful;

c.    An order permanently enjoining Defendants, their respective officers, agents, employees, and those acting in privity with them, from further direct and/or indirect infringement of the patents-in-suit.

d.    An award of damages to Gwee arising out of Defendants' infringement of the patents-in-suit, including enhanced damages pursuant to 35 U.S.C. § 284, together with prejudgment and post-judgment interest, in an amount according to proof;

e.    An award or attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

f.    Granting Gwee its costs and further relief as the Court may deem just and proper.


Dated: July 27, 2020                    Respectfully submitted,

                                        /s/ *John J. Edmonds*
                                        John J. Edmonds
                                        Texas Bar No. 789758
                                        Federal I.D. No. 22110

Stephen F. Schlather
Texas Bar No. 24007993
EDMONDS & SCHLATHER PLLC
2501 Saltus Street
Houston, Texas 77003
Telephone: (713) 364-5291
Facsimile: (713) 222-6651
jedmonds@ip-lit.com
sschlather@ip-lit.com

Barrett H. Reasoner
Texas Bar No. 16641980
Federal ID No. 14922
Mark A. Giugliano
Texas Bar No. 24012702
Federal ID No. 29171
Michael R. Absmeier
Texas Bar No. 24050195
Federal ID No.  608947
GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
breasoner@gibbsbruns.com
mgiugliano@gibbsbruns.com
mabsmeier@gibbsbruns.com

Alistair B. Dawson
Texas Bar No.  Bar No. 05596100
Federal Bar I.D. 12864
adawson@beckredden.com
Michael E. Richardson
Texas Bar No. Bar No. 24002838
Federal Bar I.D. 23630
mrichardson@beckredden.com
BECK REDDEN LLP
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

Butch Boyd
Texas Bar No. 00783694
Federal Bar I.D. 23211
Butch Boyd Law Firm
2905 Sackett Street

49

Houston, TX 77098
Telephone: (713) 589-8477
Facsimile: (713) 589-8563
butchboyd@butchboydlawfirm.com

Attorneys for Plaintiff GUI Global Products, Ltd. d/b/a
Gwee